IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY JOHNSON, | ) | CASE NO. 1:03 CV 2509 |
| | ) | |
| Petitioner, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| MARGARET BRADSHAW, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## I.      Introduction

Before the Court is Anthony Johnson's amended *pro se* petition for a writ of habeas

corpus.[1] Johnson, who is incarcerated at the Mansfield Correctional Institution,[2] asserts two

grounds for relief arising out of his conviction in state court on multiple charges in a

consolidated trial of four cases.[3]

The state opposes granting the writ.[4]  It asserts that ground one of Johnson's petition

should be denied because the state appeals court found it without merit and its decision was

a reasonable application of clearly established federal law.[5]  It further contends that ground

---

[1] ECF # 29.

[2] ECF # 30 at 1.

[3] The present habeas petition arises out of three of the consolidated cases.

[4] ECF # 30.

[5] *Id*. at 26-30.

two of Johnson's habeas petition should be dismissed as procedurally defaulted.[6] Alternatively, it argues that Johnson's second ground for relief should be denied on the merits since the alternative holding of the state appellate court was not an unreasonable application of clearly established federal law.[7]

The Magistrate Judge, for the reasons that follow, recommends finding that Johnson's first ground for relief be denied because the state appellate court's decision on that claim was not an unreasonable application of clearly established federal law.  It is further recommended that Johnson's second basis for habeas relief be dismissed as procedurally defaulted. Alternatively, this claim may be denied on its merits, inasmuch as the state appellate court's holding on the sufficiency of the evidence was not an unreasonable application of clearly established federal law.

## II.    Facts

### A.    *Trial*

The underlying facts were set forth by the state appellate court as follows,[8] with the facts of each of the three applicable consolidated cases presented in chronological order of when the offenses occurred:

_____

[6] *Id.* at 16-24.

[7] *Id.* at 30-38.

[8] Pursuant to 28 U.S.C. § 2254(e)(1) a determination of a factual issue by a state court is presumptively correct and can be rebutted only by clear and convincing evidence.  *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).  This presumption applies to facts found by the state appeals court in its review of the trial record.  *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

**Case CR 400550**

The offenses in this case occurred at approximately 6:30 to 7:00 p.m. on September 15, 2000 at the St. Maron Church parking garage located near East 12th Street and Carnegie Avenue in downtown Cleveland. Both of the female victims testified on behalf of the state.

BM [sic] testified that she and her co-worker friend, co-victim RS, had just eaten a birthday dinner for BB and were going to BB's car, a Ford Focus coupe. It was still light out. After BB had placed some of her birthday balloons inside the rear passenger seat area of the car, and RS was standing beside the passenger side of the car, BB stood up and turned to find RS standing with a man with a green jacket. The man was holding RS with his arm around her throat holding a knife. As BB walked toward the rear of the car, she told the man they didn't have any money. BB then spotted another man out of the corner of her eye. BB began to scream and run; the other man chased her. As BB reached the Carnegie entrance to the parking garage, she heard the green-jacketed man say to his accomplice, We got the money. Let's go, man. Tr. 111. BB then fell at the entrance to the garage. BB did not see where the two assailants went, but she then returned to her car where she found RS inside the car. They then went to the police to make a report.

Approximately ten days after the attack, BB observed a photographic array at the police station. See State Exhibit 1. BB, focusing on the suspects eyes and hair, picked out photo number 2 as the green-jacketed, knife-wielding assailant, after only seconds of viewing the array, and identified appellant in court as that assailant who was depicted in photo number 2. Tr. 114-117, 136, 139-142, 144, 146-147.

RS, testifying for the state, generally corroborated the version of events testified to by BB. In addition, RS testified to more information. RS stated that the person who grabbed her from behind demanded that she surrender her purse. She did not get a good look at this man, but did note that he was an African American male who wore a green windbreaker made with a rubber-type material and he pointed a knife at her throat. RS observed the other man, wearing a yellow polo shirt, advance on BB as BB started to scream and run away. The man holding RS loosened his grip and then removed the backpack purse RS was wearing over her left shoulder. RS stated that the purse contained, in part, her checkbook, credit cards, loose change, and $540 in currency which was from her cashing her payroll check. After taking the backpack, the man swung it and called to the other man that he had it. Tr. 153. At that point, the assailants ran away. Her backpack purse, minus her money, was recovered in a nearby alley later that evening. RS was unable to identify her assailant when shown a photographic array. At the police station, RS stated on cross-examination that she perused and identified a green

windbreaker, a photograph of which was admitted as State Exhibit 9, as the windbreaker her assailant had worn.  Tr. 160-161, 169.

**Case CR 399616**

The offenses in this case occurred at 3:00 p.m. on October 3, 2000 in the parking lot of the Value City Department Store located at Tiedeman and Brookpark Roads in the City of Parma.

The victim, MG, who was then a cashier at the store, had arrived early for work.  The weather was clear.  Her purse, which contained $40, credit cards, identification, and some other items, was on the passenger side of her car, a 1994 Chevrolet Cavalier coupe.  After she parked her car in an available spot, she opened her car door and, before she could exit the vehicle, was immediately attacked by a man who pushed her against her seat, touched her breasts as he leaned over her, and said that he was going to rape her.  The man was half in and half out of her car.  She screamed.  The man then ordered her to shut up and told her that he had a gun.  She never saw the gun, but believed his statement of being armed.  The man then saw her purse and grabbed it.  In the process, he also grabbed near her crotch area, Tr. 210, but did not actually touch the crotch area.  See Tr. 238.  She testified that at that point her liberty was restrained and she could not get away.  Tr. 215.  She unsuccessfully tried to push him off her.  Tr. 239.  After grabbing the purse, the man fondled her breasts from outside the clothing, then began to run away.  The victim ran after him.  After some distance, the man got into a dark-blue Buick Century and attempted to shut the door.  The victim was at the car door, struggling to get her property back and preventing, for a time, the door from closing.   As she repeatedly struck him in the face and with the door still open, the man put the car into reverse, and started to drive away in the direction of Brookpark Road with the victim still reaching inside the car with one hand for her purse as she held onto the man with the other hand.  The victim slid off the car, incurring some abrasions to her person, and heard the man's car strike a few cars as he sped away.  The victim stated that she identified the appellant from a series of six or seven photographs shown her by police later at her home.  Tr. 230.  At a live line-up conducted approximately one week after the attack, the victim identified the appellant as her attacker.  Tr. 234-235.  The victim, based on her memory of the assailant and not on any other suggestion by the police or prosecutors, also identified the appellant in court as her assailant.  Tr. 233, 237-238.  She also testified on cross-examination that she was nearsighted, had trouble with distances, and was not wearing her glasses at the time of the attack.  Tr. 219.  She did not identify the appellant merely because the authorities told her she had to identify him.  Tr. 239.

-4-

**Case CR 397780**

The offense in this case occurred at 2:30 p.m. on October 9, 2000.

Victim SB testified that she and two other victims (HP and BC) had just left class at the Academy of Court Reporting located in The Rockefeller Building on West 6th Street in downtown Cleveland and were going to HP's car, a four-door Ford Escort, which was parked in a nearby alley. As the ladies were looking for a lost hamster which HP believed was still in the car from that morning, a man came up behind SB, who was at the rear passenger door, bumped her and told her to get into the car. At first, SB did not obey, but changed her mind when the man displayed a kitchen butcher knife from his windbreaker jacket. SB identified the windbreaker shown in State Exhibit 10 as the appellant's windbreaker that she observed at the time of the offense. Tr. 247-248. The other victims and the appellant all got into the car; HP was driving. SB sat beside the appellant in the rear seat while BC sat in the front passenger seat.

While inside the car which was heading to projects, located in the vicinity of Cedar Avenue and East 30th Street in Cleveland which is where the appellant directed HP to drive toward, the appellant instructed BC to hand over her purse to him; BC complied. Appellant then instructed SB to get the wallet out of BC's purse; SB found the wallet and approximately $3.00 which was inside and was then taken by appellant. Appellant then searched SB's purse and took approximately $200 which was inside.

While the car was being driven toward the projects, the appellant bragged that he had been the subject of reporting on the front-page of the local daily newspaper.

When the car reached the projects, appellant exited the car and departed, telling the victims to have a nice day as he left. The victims then drove back to school, where the police were summoned.

SB viewed a photographic display at the Third District, but was unable to identify a suspect. Tr. 255. The day after the robbery, SB viewed an in-person lineup of approximately eight suspects at police headquarters, at which time she identified the appellant. Tr. 256. SB also identified the appellant in court. Tr. 256-258.

Victims BC and HP generally corroborated the testimony of SB. BC added that the appellant threatened to kill all of them. Tr. 274. BC also stated that the man who attacked them was very dark-skinned, that he locked the car doors when all were inside, and that she looked at the appellant's face in the rear-view mirror from time-to-time while the car was being driven. BC next stated that she had approximately $500 to $800 in cash in her purse, but that appellant only found, and took, approximately $2.50 which was in the change section of her wallet. BC identified a green hat with a polo emblem, see State Exhibit 8, as the hat which appellant wore during the robbery. Tr. 278. BC

also identified the windbreaker depicted in State Exhibit 10 as the same windbreaker which appellant wore during the robbery. Tr. 279-280.

BC, on the day of the robbery and while separated from the other victims, identified the appellant (as depicted in photograph number2) from a photographic array at the police station. Tr. 282, 285. BC also identified the appellant in court as her attacker, see Tr. 282-284, and during a line-up at the police station. See Tr. 296-297.

Victim HP added that she repeatedly observed the appellant in the rear-view mirror during the robbery. HP also identified the windbreaker in evidence as the windbreaker worn by appellant during the robbery. HP also testified that appellant wore a green hat with a polo emblem during the robbery, and identified State Exhibit 8 as that hat. HP stated that appellant took $6.00 from her which she kept in her pocket. HP identified the appellant in court as her robber. Tr. 310, 315, 323. HP, while separated from BC, identified appellant as photograph number 2 in a photographic array shown to her at the police station on the day of the robbery. Tr. 312, see State Exhibit 1 (photograph array used by the police with appellant at photograph number 2). HP was with the police after the robbery, touring the projects area, looking for the attacker, when the police located the abandoned windbreaker and hat, which HP, at the time, identified as having belonged to the robber. Tr. 313-314, see State Exhibit 16 (photograph of the windbreaker and hat as it was found by police laying on the ground near some brush beside a doorway, which was identified by HP at the scene and at trial). HP, a day or so after the robbery and without the presence of her co-victims in the line-up viewing room, identified appellant from a line-up at police headquarters. Tr. 314-315, 322.[9]

As noted, these cases were consolidated for trial.[10] Prior to trial, Johnson sought to

suppress evidence obtained from the police line-ups, alleging that he had been singled out

by the line-up process which supposedly ignored another suspect, thus tainting the resulting

---

[9] *State v. Johnson*, No. 79831, 2002 WL 538760, at **1-4 (Ohio App. 8 Dist. April 11, 2002). A copy of this decision is attached for the convenience of the District Judge.

[10] ECF # 17 at 20-23. (Motion of the state to consolidate and order granting consolidation). The page numbers cited are the Bates-stamped page numbers of the procedural record, tendered by the state in accordance with the Court's order. *See*, ECF # 7.

identifications.[11]  This suppression motion was denied.[12]  Johnson then waived his demand

for a jury trial and the cases proceeded to trial by the state court.[13]

At the close of the prosecution's case, Johnson made a Rule 29 motion for acquittal,

which the trial court granted as to various counts.[14] Johnson elected not to present any

defense.[15]  The trial judge thereupon made the following findings and imposed sentence as

follows:

> Case CR 397780 – Guilty of two counts of kidnapping, not guilty of
> one count of kidnapping, and guilty of three counts of aggravated robbery.
> Johnson to serve nine years on each count for which he was convicted, such
> sentences to run concurrently and be served consecutively to the sentences
> imposed in cases CR 399616 and CR 400550.[16]

> Case CR 399616 – Guilty of one count of the lesser-included offense
> of robbery, one count of kidnapping, one count of gross sexual imposition and
> one count of receiving stolen property.  Johnson to serve nine years each on
> the convictions for robbery and kidnapping, and one year each on the
> convictions for gross sexual imposition and receiving stolen property, such
> sentences to be served concurrently with each other.[17]

> Case CR 400550 – Guilty of one count of aggravated robbery and one
> count of kidnapping, with notice of prior conviction and repeat violent
> offender specifications attached to each count.  Johnson sentenced to three

---

[11] *See*, ECF # 18 at 12-13.

[12] *Id*. at 87.

[13] ECF # 17 at 24-25.

[14] ECF # 18 at 373-380.

[15] *Id*. at 380-81.

[16] ECF # 17 at 26.

[17] *Id.* at 27.

years on each count, the sentences to run concurrently with each other and consecutively to the sentences imposed in consolidated cases.[18]

Johnson also pled guilty to a single count of escape, for which he was sentenced to a term of three years to be served concurrently with the sentences in CR 399616 and CR 400550.

## B.    *Direct appeals*

Johnson, now proceeding through a different attorney than the one who had represented him at trial, then timely appealed from the judgments and sentences in all four cases to the state appellate court, raising four assignments of error:

1.    Johnson was denied due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10, of the Ohio Constitution when suggestive identification procedures were employed by the police.

2.    Appellant Johnson's convictions were not supported by sufficient evidence in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

3.    The convictions against Johnson were against the manifest weight of the evidence when there was no substantial evidence upon which a trier of fact could reasonably conclude that the elements had been proven beyond a reasonable doubt.

4.    The trial court erred by ordering consecutive sentences when it failed to make the necessary findings and reasons for the findings required by R.C. 2929.14(E)(4).[19]

--------

[18] *Id*. at 28.

[19] *Id.* at 31-97.

The state filed a brief in opposition.[20] The state appeals court overruled all four assignments of error but remanded the case for re-sentencing, finding that the trial court had not complied with the statutory requirements for imposing consecutive sentences.[21]

Johnson then sought review by the Ohio Supreme Court, presenting two propositions of law:

1.    The State of Ohio violates the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when it employs unduly suggestive identification procedures by repeatedly showing live and photo identification arrays that only included Appellant.

2.    A conviction is not supported by sufficient evidence in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when the State fails to prove each and every element of a crime beyond a reasonable doubt.[22]

The state filed a memorandum in response.[23] The Ohio Supreme Court denied leave to appeal,[24] and Johnson did not petition the United States Supreme Court for a writ of certiorari.

---

[20] *Id*. at 98-128.

[21] *Johnson*, 2002 WL 538760.

[22] ECF # 17 at 159-205.

[23] *Id.* at 206-22.

[24] *Id.* at 223.

*C.*     ***Post-conviction***

While the direct appeal was pending, Johnson, proceeding *pro se*, filed a motion requesting a new trial and for a finding that he was prevented from conducting discovery.[25] Johnson based this filing on a claim of newly discovered evidence, specifically that Fredrick Norman, a fellow inmate, approached Johnson in prison and confessed to the crimes for which Johnson was convicted in CR 400550.  Johnson's motion and request for a finding were denied.[26] Johnson thereupon moved for reconsideration,[27] which motion was denied.[28]

Consequently, Johnson, proceeding *pro se*, appealed these denials, asserting that "[t]he trial court abused its discretion in not holding an evidentiary hearing and denying [the] motion for new trial based on newly discovered evidence."[29] The state responded,[30] to which Johnson replied[31] and the state appeals court affirmed the decisions of the trial court.[32]

---

[25] *Id.* at 247-67.

[26] *Id.* at 268-71.

[27] *Id.* at 272-73.

[28] *Id.* at 274-75.

[29] *Id.* at 276-87.

[30] *Id.* at 288-303.

[31] *Id.* at 304-12.

[32] *Id.* at 313-19.

Johnson, again proceeding *pro se*, then sought leave to file a discretionary appeal from this ruling on appeal.[33] The Ohio Supreme Court declined jurisdiction and dismissed Johnson's appeal.[34]

## D.      Re-sentencing

Pursuant to the remand from the state appeals court, Johnson was re-sentenced as follows in the three consolidated cases where error had been found in the original sentence:

> CR 397780 – Johnson to serve sentences of seven years for each of the two convictions for kidnapping and sentences of nine years for each of the three convictions for aggravated robbery.   All sentences here to run concurrently, but consecutively with those in CR 399616 and CR 400550.[35]
>
> CR 399616 – Johnson to serve four years for conviction for robbery, seven years for conviction for kidnapping and one year each for convictions for gross sexual imposition and receiving stolen property.  All sentences here to be served concurrently to each other and consecutively to those in CR 397780 and CR 400550.[36]
>
> CR 400550 – Johnson to serve nine years for conviction for aggravated robbery and seven years for conviction for kidnapping.  These sentences to be served concurrently with each other, but consecutively to those imposed in CR 397780 and CR 399616.[37]
>
> Johnson made no appeal from his re-sentencing.

---

[33] *Id.* at 320-28.

[34]

[35] *Id*. at 338.

[36] *Id*. at 339.

[37] *Id*. at 340.

### E.     *Federal habeas petition*

On December 8, 2003, Johnson, again proceeding *pro se*, filed a petition for a writ of habeas corpus asserting three grounds for relief:

1.     Conviction was obtained by the use of coerced and suggestive identification, violating due process of the Fifth and Fourteenth Amendments.

2.     Convictions were obtained by in-sufficient [sic] evidence in violation of Petitioner's Fifth and Fourteenth Amendment constitutional rights.

3.     Convictions obtained where [sic] against the manifest weight of the evidence when there was no substantial evidence upon which a trier of fact could reasonable [sic] conclude [sic] the verdict obtained [sic].[38]

Subsequent to the state's first return of the writ,[39] Johnson's sought leave to amend the petition.[40] The state opposed the motion,[41] but, upon the approval of the Court,[42] Johnson was permitted to amend his petition, removing his third basis for relief and restating the second, so that he now seeks the writ on the following two grounds:

1.     Petitioner's conviction was obtained by the use of coerced and suggestive identification in violation of the due process clause of the Fifth and Fourteenth Amendments.

---

[38] ECF # 1 at 5-6.

[39] ECF # 15.

[40] ECF # 20.

[41] ECF # 27.

[42] ECF # 28.

-12-

> 2.     Petitioner's conviction was obtained by insufficient evidence in
> violation of his Fifth and Fourteenth Amendment rights as guaranteed
> by the United States Constitution.[43]

The state filed a new return of writ[44] arguing first that Johnson's second ground for relief was procedurally defaulted since the state appeals court held that Johnson had not adequately presented that claim to it in violation of Ohio Appellate Rule 12 and so denied relief without reaching the merits.[45] The state asserts that reliance here by the state appellate court on Ohio Appellate Rule 12 constitutes an adequate and independent state law ground for precluding federal habeas review of this claim[46] and that Johnson has demonstrated neither cause nor prejudice to excuse this default.[47] Moreover, the state maintains that Johnson has not otherwise evaded the bar of procedural default by establishing his actual innocence.[48] The state further contends that the Ohio appellate court's alternative conclusion on this claim, which was to deny it on its merits, was not an unreasonable application of clearly established federal law.[49]

---

[43] ECF # 26, Ex. 1 at 5.

[44] ECF # 30.

[45] *Id*. at 16.

[46] *Id.*

[47] *Id.* at 21.

[48] *Id.*

[49] *Id*. at 30.

In respect of Johnson's first ground for habeas relief – the challenge to the pre-trial identifications – the state maintains that the denial of this claim by the state appeals court was not an unreasonable application of the clearly established federal law of *Neil v. Biggers*.[50]

Johnson has filed a traverse to the first return of the writ,[51] as well as a traverse to the second return by the state.[52]  In neither does Johnson directly address the state's contention that his second ground for relief is procedurally defaulted.  However, Johnson appears to maintain that any default on his argument that there was insufficient evidence for his convictions can be attributed in the first instance to error of his trial counsel[53] and then the difficulty of proceeding as a *pro se* litigant.[54]

Johnson further argues that the state appeals court improperly applied clearly established federal law to his first habeas claim concerning improper line-ups. Specifically, he contends that he was the only constant in the combination of the photo array and the in-person line-up, and so any identification flowing from that combination is impermissibly suggestive under the rubric of *Biggers*.[55]

---

[50] *Id.* at 26, citing *Neil v. Biggers*, 409 U.S. 188 (1972).

[51] ECF # 23.

[52] ECF # 32.

[53] *See*, *id.* at 5-6.

[54] *Id.*

[55] *Id.* at 2-5.

Johnson's second traverse deals exclusively with rebutting what he claims is the state's contention in its return that he failed to exhaust his state remedies.[56]  This notwithstanding that the state specifically stated in its second return of the writ that "Respondent states that no claim in the petition is barred by failure to exhaust state remedies."[57]

The claims are presently before the Magistrate Judge on referral for a report and recommendation.[58]

## III.  Analysis

**A.  *Johnson's second ground for relief contesting the sufficiency of the evidence used to convict him should be dismissed as procedurally defaulted, or, alternatively, denied on the merits since the decision of the state appeals court here is not an unreasonable application of clearly established federal law.***

*1.  The standard of review/ procedural default*

Procedural default has long been analyzed in the Sixth Circuit pursuant to the four-part test articulated in *Maupin v. Smith*.[59] The test requires the reviewing court to ask; (1) whether the petitioner failed to comply with an applicable state procedural rule; (2) whether the state courts actually enforced the procedural sanction; (3) whether the state procedural bar is an adequate and independent state ground on which the state can foreclose

---

[56] ECF # 32.

[57] ECF # 30 at 14.

[58] ECF # 7.

[59] *Maupin v. Smith,* 785 F.2d 135 (6th Cir. 1986).

federal review; and (4) whether the petitioner can demonstrate cause for, and actual prejudice resulting from, the procedural default.[60]

As noted by the state, this test may be overlooked in extraordinary cases where a petitioner presents new and reliable evidence that a constitutional violation has probably resulted in the conviction of one who is actually innocent. In such cases, a habeas court may review the underlying merits of the claim to prevent a fundamental miscarriage of justice.[61]

2.    *Application of the standard of review/ procedural default*

The first two elements of *Maupin* require that the petitioner be shown (1) to have failed to comply with an applicable state procedural rule, and (2) that the state courts actually enforced that rule in the petitioner's case.

Here, the record shows that the appeals court to which Johnson brought his claim of insufficient evidence found that Johnson had not presented this claim in conformity with Ohio Appellate Rule 16 and so denied review on the merits.[62]

After holding that review of Johnson's sufficiency of the evidence claim was barred by operation of Ohio Appellate Rule 16(A)(7), the state appeals court then noted in a brief statement that, in the alternative, the trial court as the finder of fact could have found,

---

[60] *Id.* at 138. This test remains the operative methodology for analyzing procedural default. *See*, *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).

[61] *Schlup v. Delo*, 513 U.S. 298, 326-32 (1995).

[62] *Johnson*, 2002 WL 538760, at *7. After laying out the standard for review, Johnson then "perfunctorily references this court to his motions for acquittal presented at trial," not to "citations to appropriate authorities, statutes and the record," as required by Ohio App. R. 16(A)(7). A claim so presented on appeal is a "defectively presented argument" that "prevents an appellate court from considering an assignment of error."

viewing the evidence most favorably to the state, "the elements of the crimes proven beyond a reasonable doubt."[63]

Here, Johnson admits that he failed, through counsel, "to present in [my] direct appeal to the State Court any argument in support of this claim [of insufficient evidence]."[64] He further does not contest the finding that the absence of "any arguments or authorities in support of [this] claim"[65] constitutes a violation of Ohio appellate rules and that the state appeals court did enforce this rule against him.[66]

Accordingly, the Magistrate Judge recommends finding that the first two steps of the *Maupin* test for procedural default be found to have been established.

In its third step, *Maupin* requires that the procedural default be "an adequate and independent" state ground on which the state can rely to foreclose consideration of a federal constitutional claim.

---

[63] *Id.*

[64] ECF # 23 at 5, 6.

[65] *Id*. at 6.

[66] The fact that the Ohio Supreme Court decision affirming the conclusion of the state appeals court here did not cite any reasons for its holding does not alter the rule that a federal habeas court must assume that the unexplained order of the final state court concerning a decision resting on a procedural default relied upon the same basis. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

In *Greene v. Brigano*,[67] the Sixth Circuit, in considering the question of when a *pro se* habeas petitioner must receive a copy of his state trial transcript, noted the mandatory nature of the requirement of Ohio Appellate Rule 16 that an appellant provide citations to specific portions of the record as a condition for state appellate review:

> For example, Rule 16(A)(7) provides: "The appellant *shall* include in his brief ... [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to ... parts of the record on which appellant relies." (emphasis added).   Similarly, Rule 16(D) states that: "[r]eferences in the brief to parts of the record *shall* be to pages of the parts of the record involved; e.g., ... Transcript p. 231 ... If reference is made to evidence, the admissibility of which is in controversy, reference *shall* be made to the pages of the transcript at which the evidence was identified, offered and received or rejected." (emphasis added).   Considering that the Ohio Appellate Rules require citation to the record in support of each assignment of error, access to that record is a necessity.[68]

Inasmuch as *Greene* held that this requirement in Ohio Appellate Rule 16 to include specific citations to the record for assignments of error – the basis for the appeals court here denying Johnson a review of his claim on the merits – was mandatory, and so required a *pro se* habeas litigant be provided a transcript, it is necessarily inherent in *Greene* that Ohio

---

[67] *Greene v. Brigano*, 123 F.3d 917 (6th Cir. 1997).   Johnson here does contend that he did not receive a copy of his trial transcript from the state for use in preparing any response to the state's return of the writ.   *See*, ECF # 23 at 2, 5.   The issue presented by this petition, however, is whether Johnson, acting through his appellate attorney who has not been alleged to have been without access to the trial transcript, failed to comply with the state rule requiring citation to the record as part of properly presenting an appeal.

[68] *Id.* at 919.

Appellate Rule 16 is an adequate and independent state law basis on which Ohio may rely to preclude federal habeas review of any federal constitutional claim.[69]

Therefore, the Magistrate Judge recommends finding that the third portion of the *Maupin* test for establishing procedural default is met in this case.

Finally, *Maupin* requires that, if the preceding elements are satisfied, it be determined if the relevant procedural default may be excused for cause or actually prejudiced the petitioner.  If the cause is alleged to be attorney error, then the issue of ineffective assistance of counsel must itself be presented to and exhausted in the state courts.[70]  If no sufficient cause is shown for the procedural default, then the habeas court need not consider the issue of prejudice.[71]

As noted, Johnson seeks to excuse his non-compliance with the state appellate rule requiring citation to the record as a pre-condition for appellate review of any claim by asserting both that his "counsel's negligence" was responsible for the failure to make the necessary arguments and citations to authority in his appeal,[72] and that the state courts should have reached the merits under the doctrine of "plain error."[73]

---

[69] *Greene*, 123 F.3d 917.

[70] *Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000).

[71] *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

[72] ECF # 23 at 5, 6.

[73] *Id.* at 6.  Johnson's two arguments plainly contradict the state's contention that "Johnson has failed to offer any explanation for his default in presenting habeas ground two to the Ohio courts."  ECF # 30 at 21 (emphasis in original).

Initially, the Magistrate Judge observes that Johnson did not attempt to assert any claim of error against his appellate counsel in any Ohio post-conviction proceeding, such as an Ohio Appellate Rule 26(B) application to reopen his appeal.  Therefore, Johnson cannot here seek to excuse his failure to comply with Ohio rules concerning citation to the trial record on grounds of ineffective assistance of appellate counsel, since he has not previously sought to  present such an ineffective assistance claim to any Ohio court.[74]

Accordingly, since Johnson has not properly presented any cause to excuse his failure to follow Ohio rules on appeal, and since the other *Maupin* elements required to establish procedural default have been satisfied,[75] the Magistrate Judge recommends that this ground for federal habeas relief be dismissed as procedurally defaulted.

Alternatively, should the District Judge conclude that Johnson is arguably correct in his alternative contention that the "plain error" doctrine overrides any procedural default here and permits review of this claim on the merits, the Magistrate Judge recommends that the claim be denied on the basis that the alternative holding of the state appeals court in that respect was not an unreasonable application of clearly established federal law.

This Court must then, in addressing the merits of Johnson's claim, consider if a "rational trier of fact could have found proof of guilt beyond a reasonable doubt"[76] as to each

---

[74] *Edwards*, 529 U.S. at 452.  *See also*, *Deitz v. Money*, 391 F.3d 804, 809 (6th Cir. 2004) "A claim of ineffective assistance of counsel must be presented to the state courts as an independent claim before it can be used to establish cause for a procedural default."

[75] As noted earlier, the issue of any prejudice need not be considered if no cause for the default can be established.

[76] *Jackson v. Virginia,* 443 U.S. 307, 324 (1979).

element of the crimes for which Johnson was convicted.  The state appeals court, in presenting its alternative holding, so found in affirming the trial court's denial of the Rule 29 motion for acquittal.[77]

3.    *Standard of review/unreasonable application*

A federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the holdings of the United States Supreme Court but then unreasonably applies that principle to the facts of the case.[78]  The federal reviewing court must determine if the state court decision was "objectively unreasonable" and not merely erroneous or incorrect.

Initially, as noted, Johnson here has specifically directed "this court's attention to the argument [as to insufficiency of the evidence] presented by petitioner in his direct appeal to the [state appeals court]" to form the  basis for this habeas claim.[79]  That claim throughout the state appeals, in turn, was simply a statement to the state courts to look to Johnson's Ohio Criminal Rule 29 motion at trial.[80]

_____

[77] *Johnson*, 2002 WL 538760, at *7.

[78] *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000).

[79] ECF # 23 at 5.

[80] *See*, ECF # 17 at 47 (brief to state appeals court)("Here, ...upon the same basis as stated by defense counsel in his motions for acquittal under Crim. R. 29, viewing the evidence in a light most favorable to the State, the prosecution failed to prove each and every element of Mr. Johnson's conviction beyond a reasonable doubt."); 172 (brief to the Ohio Supreme Court) (Exact quotation of the preceding sentence from the brief on appeal).

-21-

Thus, inasmuch as the only court to receive a detailed claim of which trial evidence was insufficient in certain specific respects[81] was the state trial court that considered Johnson's Rule 29 motion, and since Johnson has described the contours of his federal habeas claim in terms of that Rule 29 motion, this Court should look to that motion for the specifics of the claim.

Moreover, since the state appeals court correctly identified the controlling principle from *Jackson v. Virginia* that sufficiency of the evidence may be found when, "after considering the evidence supporting these assorted convictions in a light most favorable to the prosecution, the [trial] court [as factfinder] could have found the elements of the crimes proven beyond a reasonable doubt,"[82] its alternative decision that "the trial court did not err in denying the motions for acquittal"[83] should be reviewed here to determine if it is an unreasonable application of *Jackson.*

4.    *Application of clearly established federal law*

A review of the trial record shows that in presenting his Rule 29 motion for acquittal, defense counsel initially addressed the evidence supporting the charges against Johnson in CR 40050 and stated that the testimony of one of the two victims attacked in the garage was, in light of the testimony of the second victim,  "in total contradiction to what the facts

---

[81] *See*, ECF # 19 at 373-76 (defense arguments as to the specific charges in each case for which acquittal was sought pursuant to Ohio Crim. R. 29 for lack of sufficient evidence); and at 376-79 (state's response).

[82] *Johnson*, 2002 WL 538760, at *7.

[83] *Id.*

actually [were]."[84]  Defense counsel maintained that if one believed RS, then there was "no way BB could have seen the second assailant, which would have been the person who put the knife around RS's neck, because RS was on the opposite side of the car [to BB]."[85]

As the state appeals court recounted the facts, BB testified that she did see MS with a man wearing a green windbreaker holding a knife to her throat and told that man that they didn't have any money.[86] At a line-up, BB, "focusing on the suspect's eyes and hair," picked out Johnson "as the green-jacketed, knife-wielding assailant, after only seconds of viewing the [photo] array, and identified [Johnson] in court as that assailant ..."[87]

Therefore, given that there was credible testimony that BB did see Johnson attack RS and was able to identify him as RS's attacker, the Magistrate Judge recommends finding that the decision by state appeals court to affirm the ruling of the trial court not to dismiss for lack of sufficient evidence the charges against Johnson in CR 400550 that he committed aggravated robbery against RS is not an unreasonable application of *Jackson*.

As to CR 399616, Johnson's defense counsel argued to the trial court that, according to the victim, MG, "there was no attempted rape, there was no kidnapping that occurred, and there is no evidence that Anthony Johnson ... stole the vehicle...."[88]

---

[84] ECF # 19 at 373.

[85] *Id.* at 374.

[86] *Johnson*, 2002 WL 538760, at *1.

[87] *Id.* at *2.

[88] ECF # 19 at 374.

Initially, it must be noted that the trial court did grant the Rule 29 motion as to the charge of attempted rape.[89] As for the balance of this defense motion, the appeals court review found that the victim had been pushed into her car by a man who claimed to be armed.[90] She testified that her liberty was restrained[91] and that she was attempting to push her attacker off of her.[92]  She further testified that her attacker, whom she later identified in both a photo array and at a line-up as Johnson,[93] got into a dark blue Buick Century[94] that police later identified as having been stolen that morning from Amparo Hernandez[95] and used in the particular crime here.[96]  Mrs. Hernandez testified at trial that she had not given Johnson permission to take her car.[97]

Again, using the specific Rule 29 motion at trial as stating the boundaries of the current claim, there is ample evidence, when viewed most favorably to the state, to support Johnson's conviction in CR 399616 on kidnapping and receiving stolen property. Thus, the Magistrate Judge recommends finding that the decision by the state appeals court to affirm

---

[89] *Id*. at 380.

[90] *Johnson*, 2002 WL 538760, at *2.

[91] *Id*.

[92] *Id.*

[93] *Id*.

[94] *Id.*

[95] ECF # 19 at 378.

[96] *Id.*

[97] *Id*. at 387.

the trial court's denial of Johnson's Rule 29 motion in these respects is not an unreasonable application of *Jackson.*

Finally, as to CR 397780, Johnson's trial counsel asserted that the testimony of the three victims who were forced into a car outside the Academy of Court Reporting, driven to the projects and robbed, was "incredulous, and, clearly all three of them got together and concocted this story against Mr. Johnson."[98]

The evidence as recounted by the appeals court, however, was that there was direct testimony by all three victims that they were forcibly deprived of their liberty and removed from the street in downtown Cleveland by a man who displayed a knife;[99] that they were all methodically robbed[100] as they were forced to drive into the projects,[101] where they were released.

Further, all the victims were able, independent of each other,[102] to identify Johnson as the attacker[103] and to identify that he wore a distinctive hat and/or windbreaker.[104]  One victim, while touring the projects with police later during the day of the crime, was able to locate the hat and windbreaker all three victims had described as being worn by their

---

[98] ECF # 19 at 376.

[99] *Johnson*, 2002 WL 538760, at *3.

[100] *Id.*

[101] *Id.*

[102] *Id.* at **3-4.

[103] *Id.*

[104] *Id.*

assailant, laying on the ground near a doorway of where Johnson had ordered the women to drive him.[105]

Once again, taking the limits of the current claim to be as it was stated in the Rule 29 motion at trial, there was sufficient, corroborated evidence from all three of these women to prove to a reasonable factfinder that they were kidnapped and robbed, as well as that Johnson was guilty of those crimes.  As such, the Magistrate Judge recommends finding that the decision of the state appeals court in affirming the trial court's denial of the Rule 29 motion here be found to be not an unreasonable applications of *Jackson*.

Accordingly, as to Johnson's second ground for habeas relief, the Magistrate Judge recommends that should the merits of the claim be reached, the claim be denied in that the alternative holding of the state appellate court – that the trial court did not err in denying Johnson's Rule 29 motion for acquittal for  insufficiency of the evidence in specific respects – was not an unreasonable application of the clearly established federal law of *Jackson*.

**B.** *Johnson's first ground for habeas relief – that the police identification procedure was unreliable and unduly suggestive – should be denied, in that the state appeals court's holding that the identification process here was valid was not an unreasonable application of clearly established federal law.*

1. *Clearly established federal law*

Claims that out-of-court identifications violate due process are governed by *Neil v. Biggers.*[106] As the Sixth Circuit observed in *Howard v. Bouchard*,[107] "[a]n identification

---

[105] *Id.* at *4.

[106] *Neil v. Biggers*, 409 U.S. 188 (1972).

[107] *Howard v. Bouchard*, 405 F.3d 459 (6th Cir. 2005).

violates the defendant's right to due process where the identification procedure was so unnecessarily suggestive as to run the risk of irreparable mistaken identity."[108]  The court must first address whether the identification process was "unduly suggestive," which may still be found non-violative if it is also found to be "nonetheless reliable."[109]

A habeas petitioner bears the burden of establishing that the identification was impermissibly suggestive.[110]

In determining whether an identification is unduly suggestive, the reviewing court "look[s] to the effects of the circumstances of the pretrial identification, not whether the law enforcement officers intended to prejudice the defendant."[111]

Should the identification be found to be unduly suggestive, the court moves on to consider the reliability of that identification:

> In judging reliability, we consider the totality of the circumstances, including the factors described in *Manson* and *Biggers*: (1) the opportunity of the witness to view the defendant at the initial observation; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the defendant; (4) the level of certainty shown by the witness at the pretrial identification; and (5) the length of time between the initial observation and the identification.[112]

---

[108] *Id.* at 469.

[109] *Id.*

[110] *Id.*

[111] *Id.* at 470.

[112] *Id.* at 472, citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977), *Biggers,* 409 U.S. at 199-200.

These factors are to be weighed against any "corrupting effect of the suggestive identification."[113]  Further, applying these tests for reliability means that "[a]n earlier failure to identify, or even a positive identification of a different suspect, does not require exclusion of an in-court or pretrial identification, if otherwise reliable."[114]

2.    *Application of the clearly established federal law*

Here, the state appeals court correctly identified these principles of clearly established federal law.[115] Johnson essentially agrees that the correct principles of law were recognized by the state appeals court.[116]  However, Johnson argues that the state court was unreasonable in its application of these principles to the facts of his case.[117]  His central argument is that he was the only common element in the photo arrays and the live line-ups.  Witnesses who did not identify him in their review of the photos then impermissibly suggested that he was the prime suspect by seeing only him as a repeat from the photos in the live line-up.[118]

The appeals court did not directly address Johnson's complaint about being the only common denominator in both types of identification procedures. However, the court noted that the police initially arrived at Johnson as a suspect through investigation, not by a victim

---

[113] *Howard,* 405 F. 3d at 472, quoting *Manson*, 432 U.S. at 114.

[114] *Id.* at 484 (collecting cases).

[115] *See*, *Johnson*, 2002 WL 538760, at **5-6.

[116] ECF # 23 at 4, citing to *Biggers*.

[117] *Id*. at 3-5.

[118] *Id.*

identification.[119] Then, in compiling both the photos and the line-up participants, the police selected individuals who were similar to Johnson in race, age, build, height and skin color.[120] The police kept the victims apart during and after viewing the photo array and the line-up so as to minimize the risk of influencing the identifications.[121]

The appeals court then applied the various elements of the test for reliability and noted that the victims all had "ample opportunity" to view Johnson's face during the crimes;[122] the victims' prior description of their attacker to police "was relatively similar;"[123] the level of certainty about selecting Johnson as the perpetrator was "uniformly high;"[124] the length of time between the crime and the identification was short, ranging from as little as a few hours to a few weeks, depending on the case;[125] and, finally, "each victim who testified at trial identified [Johnson] unequivocally and without hesitation, as the person who committed the crimes herein."[126]

---

[119] *Johnson*, 2002 WL 538760, at *6.

[120] *Id.*

[121] *Id.*

[122] *Id.*

[123] *Id.*

[124] *Id.*

[125] *Id.*

[126] *Id.*

Accordingly, the state appeals court concluded that "even if we were to conclude that the photo array and the line-up were suggestive, taking into consideration the totality of the circumstances in this case, we cannot say that [Johnson's] identification was unreliable."[127]

So, too, the Magistrate Judge recommends finding that at best Johnson's present claim may establish that having him be the only common person in the photo array and the line-up was suggestive.  However, as the state court concluded, that suggestiveness did not vitiate the identification since the totality of the circumstances provides sufficient evidence to find that it was reliable.

Therefore, the Magistrate Judge recommends finding that the decision of the state court as to this claim be found to be not an unreasonable application of clearly established federal law and that Johnson's habeas claim be denied.

## IV.    Conclusion

For the above reasons, the Magistrate Judge recommends dismissing and/or denying Johnson's amended petition for the writ of habeas corpus.

Dated:  July 27, 2006                                    s/ William H. Baughman, Jr.
                                                         United States Magistrate Judge

---

[127] *Id.*

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[128]

---

[128] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).